[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-17126
_____

D.C. Docket No. 5:16-cv-00387-JSM-PRL


STACEY HART,

Plaintiff - Appellant,

versus

CREDIT CONTROL, LLC,

Defendant - Appellee.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(September 22, 2017)

Before TJOFLAT and WILSON, Circuit Judges, and ROBRENO,* District Judge.

WILSON, Circuit Judge:

_____

* Honorable Eduardo C. Robreno, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

This appeal requires us to answer two important questions—one that we have not addressed explicitly, and one that we have not had occasion to address at all.  Within the confines of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, we must decide whether a voicemail left by a debt collector constitutes a "communication," and we must determine what information will and will not constitute a "meaningful disclosure."  Stacey Hart appeals the dismissal of her FDCPA claims against Credit Control, a debt collector.  She alleges that Credit Control violated the FDCPA not only by failing to provide the required disclosures for initial communications with consumers, but also by failing to provide meaningful disclosure.  The district court dismissed Hart's claims, finding that Credit Control was not subject to the initial communication requirements because the voicemail it left was not a communication, and finding that Credit Control provided meaningful disclosure despite the individual caller not identifying herself by name.  Having had the benefit of oral argument, we reverse and remand in part and affirm in part.

## I.

In March 2015, Hart received a call from Credit Control, a debt collector. When Hart did not answer the phone, Credit Control left a voicemail which, in its entirety, stated:

2

> This is Credit Control calling with a message. This call is from a debt collector. Please call us at 866-784-1160. Thank you.

This was Credit Control's first communication with Hart. Although Credit Control was attempting to collect a debt from Hart, the individual caller did not disclose that information. Nor did the individual caller identify herself by name. Following that initial call and voicemail, Credit Control continued to call Hart, leaving substantially similar voicemails each time.

Hart filed a complaint in the Middle District of Florida alleging that Credit Control violated two provisions of the FDCPA—§ 1692e(11) and § 1692d(6)—governing false or misleading representations and harassment and abuse respectively. In granting Credit Control's motion to dismiss, the district court found that Credit Control did not violate § 1692e(11) because the first voicemail was not a "communication" within the meaning of the statute. The district court also found that Credit Control did not violate § 1692d(6) because its caller provided Hart with "meaningful disclosure." The district court reasoned that the voicemails provided "meaningful disclosure" because they provided enough information not to mislead the consumer as to the purpose of the call. Upon dismissal, Hart timely appealed.

3

## II.

We review issues of statutory interpretation de novo. *Davidson v. Capital One Bank (USA), N.A.*, 797 F.3d 1309, 1312 (11th Cir. 2015). We also conduct a de novo review of a district court's dismissal of a complaint for failure to state a claim. *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003) (per curiam).

## III.

In order to protect consumers, Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010) (per curiam) (internal quotation marks omitted). "The [FDCPA] imposes civil liability on debt collectors for certain prohibited debt collection practices." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich L.P.A.*, 559 U.S. 573, 576, 130 S. Ct. 1605, 1608 (2010) (internal quotation marks omitted).

Hart alleges that Credit Control violated two sections of the FDCPA— § 1692e(11) and § 1692d(6). First, she argues that Credit Control violated § 1692e(11) when it failed to make the required disclosures for initial communications in its first voicemail to her. Credit Control counters that it was not required to make such disclosures because the voicemail was not a communication. Second, she argues that Credit Control violated § 1692d(6) when its individual callers did not identify themselves by name in any of the voicemails,

4

thus failing to provide Hart with "meaningful disclosure." Credit Control contends that the individual caller's name is not necessary for such disclosure. While we agree with Hart that the initial voicemail left by Credit Control is a communication within the meaning of the FDCPA, thereby triggering the requirements of § 1692e(11), we disagree with her contention that Credit Control's individual callers failed to provide "meaningful disclosure" by failing to leave their names.

*A.*

The voicemail left by Credit Control falls squarely within the FDCPA's definition of a communication. And because it was Credit Control's initial communication with Hart, Credit Control's failure to make the required disclosures was a violation of § 1692e(11).

"As in all statutory construction cases, we assume that the ordinary meaning of the statutory language accurately expresses the legislative purpose." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 376, 133 S. Ct. 1166, 1172 (2013) (internal quotation marks omitted). The FDCPA defines "communication" as "the conveying of information regarding a debt [either] directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). We need not look any further than the statutory language of the FDCPA to decide that the voicemail is a "communication." Credit Control's first voicemail to Hart falls squarely within the FDCPA's broad definition of communication. The voicemail, although short,

5

conveyed information directly to Hart—by letting her know that a debt collector sought to speak with her and by providing her with instructions and contact information to return the call.  The voicemail also indicated that a debt collector was seeking to speak to her as a part of its efforts to collect a debt.  Credit Control argues that because the voicemail "essentially reveals no more than a hang-up call," it cannot be a "communication."  However, adopting that view would cause us to ignore the broad statutory language.  The statute broadly defines "communication" as a conveying of information "regarding a debt."  *See id.*  In order to be considered a communication, the only requirement of the information that is to be conveyed is that it must be regarding a debt.  We can assume that by choosing to omit any qualifier other than requiring that the call must be regarding a debt, Congress meant to allow *any* information, as long as it regards a debt.  *See id*.  There is no requirement in the statute that the information must be specific or thorough in order to be considered a communication.

Though the statutory language is dispositive, we draw additional support for our conclusion from our caselaw.  In *Edwards v. Niagra Credit Solutions, Inc.*, we dealt with a separate issue but analyzed similar voicemails and held that they too were communications.  *See* 584 F.3d 1350, 1351, 1353 & n.3 (11th Cir. 2009).  The voicemails there revealed only that the messages were intended for Edwards, and left contact information and instructions regarding returning the call.  *See id.*

at 1351.  While the issue there was the individual callers' failure to reveal the fact that the calls were in fact from a debt collection company, that distinction is irrelevant to our analysis here because those voicemails were still considered communications.  *See id.* at 1353 & n.3.  Furthermore, the fact that the voicemails in *Edwards* were not *initial* communications is also irrelevant because, again, they were communications nonetheless.  *Id.*  Credit Control's argument that *Edwards* is not applicable falls short.  *Edwards* is not distinguishable here based on the fact that it was not the first time the debt collector contacted the consumer; that fact has no bearing on whether the voicemails constituted communications in the first place.

Whether it was the debt collector's first communication with the consumer is significant only in determining whether the debt collector should have given the required disclosures, also known as the "mini Miranda" warning.[1]  Here, Credit Control should have provided Hart with the required disclosures.  The FDCPA requires the "mini Miranda warning" to be given in the initial communication between a debt collector and consumer.  Specifically, this warning requires that the debt collector disclose that he or she is "attempting to collect a debt and that any information obtained will be used for that purpose."  15 U.S.C. § 1692e(11).  In

---

[1] Courts have begun referring to the initial communication disclosures required by 15 U.S.C. § 1692e(11) as the "mini Miranda" warning.  *See Berg v. Merchants Ass'n Collection Div., Inc.*, 586 F. Supp. 2d 1336, 1341 (S.D. Fla. 2008).

this case, because the voicemail was not only a communication, but the *first* communication, Credit Control was required to do just that.

### B.

On the other hand, Credit Control provided meaningful disclosure even though its callers failed to leave their names.  Generally, § 1692d aims to protect consumers from harassment and abuse by unscrupulous debt collectors and subsection (6) prohibits debt collectors from placing calls without "meaningful disclosure of the caller's identity."  In pertinent part, the FDCPA prohibits debt collectors from:

> engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.  Without limiting the general application of the foregoing, [it] is a violation of this section . . . [to place] telephone calls without meaningful disclosure of the caller's identity.

15 U.S.C. § 1692d(6).  We are now asked to determine whether "meaningful disclosure" is provided when an individual caller fails to disclose her name but discloses the name of the debt collection company and the nature of the company's business.  We answer that question in the affirmative.

The FDCPA is silent on what constitutes "meaningful disclosure."  To date, the question of what constitutes "meaningful disclosure" has been addressed neither by this court nor our sister circuits.  Although many lower courts have addressed the issue, they have failed to reach a full consensus.  *Compare Wright v.*

8

*Credit Bureau of Ga., Inc.*, 548 F. Supp. 591, 597 (N.D. Ga. 1982) (holding that "meaningful disclosure" requires a debt collector to disclose the debt collection company's name, the nature of the business, and the individual caller's name or "desk name"), *with Torres v. ProCollect, Inc.*, 865 F. Supp. 2d 1103, 1105 (D. Colo. 2012) ("A caller's name (and certainly not a caller's alias) has no real 'meaning' to a consumer . . . . Thus, the only way for an identity disclosure to be meaningful to a consumer is if it discloses the name of the debt collection company."). We hold that meaningful disclosure does not require the individual caller to reveal her name, and this holding comports with text of the FDCPA.

Section 1692 prohibits debt collectors from "harass[ing], oppress[ing], or abus[ing] any person in connection with the collection of a debt." 15 U.S.C. § 1692d. And in line with that goal, subsection (6) prohibits placing "telephone calls without meaningful disclosure of the caller's identity." *See id.* at §1692d(6). The FDCPA provides consumers with recourse following abusive behavior by debt collectors during the course of collecting a debt. Given this scheme, the debt collection company's name is plenty to provide "meaningful disclosure." The individual caller here is working on behalf of the debt collection company, which is the actual entity collecting the debt. An individual caller's name is ancillary to the debt collection company's name and adds little value to a consumer who seeks to complain about the debt collection company's behavior. The company is

9

collecting the debt; the caller is merely an arm of the company.  Equipped with the knowledge that the call is being placed on behalf of a debt collection company and the company's name, a consumer has enough information to protect herself under the FDCPA.

Among other things, Hart argues that the plain language of the statute requires the individual caller to reveal her name because the FDCPA states that debt collectors may not place "calls without meaningful disclosure of the *caller's identity*."  15 U.S.C. § 1692d(6) (emphasis added).  Hart advocates for us to take the phrase "the caller's identity" quite literally, which would imply that meaningful disclosure requires the identity of the individual actually placing the call.  However, that reading is a little *too* literal and adopting it would pull us away from our duty to "bear[] in mind the fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."  *Utility Air Regulatory Grp.v. E.P.A.*, 573 U.S. ___, ___, 134 S. Ct. 2427, 2441 (2014); *see also King v. Burwell*, 576 U.S. ___, ___, 135 S. Ct.  2480, 2495 (2015) (explaining that context matters).  Overall, the FDCPA and, more specifically, § 1692d aims to protect consumers from unsavory practices of debt collectors.  Thus as long as the consumer is made aware of the debt collector's name, i.e., the company collecting the debt, meaningful disclosure is provided.

10

The identity of the caller is meaningfully disclosed provided that both the name of the debt collection company and the nature of the company's business are disclosed.  This is so because the debt collection company's name and the nature of its business are enough to prevent the debt collector from "harass[ing], oppress[ing], or abus[ing]" the consumer.  Because the individual callers here disclosed that they were calling on behalf of Credit Control, a debt collection company, Hart was provided with meaningful disclosure, and thus no violation of § 1629d(6) occurred.

## IV.

We find that this voicemail, and other voicemails like it, constitute a communication within the meaning of the FDCPA.  Specifically, we hold that a voicemail can, and will, be considered a communication under the FDCPA if the voicemail reveals that the call was from a debt collection company and provides instructions and information to return the call.  However, we stop short of requiring individual callers to identify themselves by name to avoid violating the FDCPA.  Specifically, we hold that meaningful disclosure is provided as long as the caller reveals the nature of the debt collection company's business, which can be satisfied by disclosing that the call is on behalf of a debt collection company, and the name of the debt collection company.  We remand to the district court for further proceedings consistent with this opinion.

**REVERSED AND REMANDED IN PART, AFFIRMED IN PART.**